ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR 1 1 2025

KEVIN P. WEIMER, Clerk
By· *ujuy*
         Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

TEQUILA L. BROWN

Criminal Information

No. 1:25-CR-00084

THE UNITED STATES ATTORNEY CHARGES THAT:

**Count One**
(Conspiracy to Commit Wire Fraud)
18 U.S.C § 371

1. Beginning in or about March 2020, and continuing through in or about July 2020, in the Northern District of Georgia and elsewhere, the Defendant, TEQUILA L. BROWN, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown, to commit an offense against the United States, namely, to defraud the Small Business Administration ("SBA") by knowingly devising and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material fact, and for the purpose of executing this scheme, causing wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343.

### The Small Business Administration

2. During the relevant time period, the United States Small Business Administration ("SBA") was an executive branch agency of the United States that

provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans were guaranteed by the government.

### The Paycheck Protection Program

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to

2

state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

6. PPP loan applications were processed by participating lenders. If a PPP loan application was approved, the lender funded the PPP loan using its own money, which was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan.

7. Businesses were required to use PPP loan proceeds on certain permissible expenses — payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

8. In order to get the loan forgiven, borrowers were required to complete an online forgiveness application that was submitted to the lender for approval. After the forgiveness application was approved, the borrower was no longer responsible to pay back the PPP loan to the lender.

9. The PPP was overseen by the SBA, which had authority over all loans. Individual PPP loans, however, were issued by private approved lenders (most

3

commonly, banks and credit unions), which received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds.

### Relevant Entities

10. During the relevant time period, Royalty Trucking LLC ("Royalty Trucking") was a trucking business that Defendant BROWN owned and operated. It was registered with the Georgia Secretary of State and listed its principal business address as a location on Crestwood Parkway in Duluth, Georgia. It maintained a Wells Fargo bank account ending 6550. Defendant BROWN was the sole authorized signatory on the account.

11. During the relevant time period, JSB Carriers LLC ("JSB") was a trucking business own and operated by a co-conspirator. It was registered with the Georgia Secretary of State and listed its principal business address as a location on Beckenham Lane in Dacula, Georgia. It maintained a Bank of America ("BOA") bank account ending 6708. A co-conspirator was the sole authorized signatory on the account.

12. Celtic Bank was a commercial financial lender and a leader in SBA loans. It was headquartered in Salt Lake City, Utah.

### Manner and Means

13. Defendant BROWN, conspiring with others known and unknown, submitted false and fraudulent PPP loan applications for Royalty Trucking and JSB in order to obtain two PPP loans, totaling $600,000. The fraudulent applications contained misrepresentations regarding the number of employees

4

and average monthly payroll of the businesses. Royalty Trucking and JSB were not eligible to receive PPP loans and did not spend the loan proceeds in a manner consistent with the terms of the PPP.

### Overt Acts

14. On or about May 9, 2020, Defendant BROWN and others applied for and obtained a PPP loan on behalf of Royalty Trucking in the amount of $450,000. In the loan application, Defendant BROWN and others falsely stated that Royalty Trucking had 15 employees and an average monthly payroll of $180,000. They submitted a fraudulent IRS Form 941 quarterly return for the first quarter of 2020 that falsely showed 15 employees and wages of $540,000.

15. After receiving the PPP loan proceeds, Defendant BROWN and others did not spend the funds on payroll or in a manner consistent with the terms of the PPP.

16. On or about May 9, 2020, Defendant BROWN and others applied for and obtained a PPP loan on behalf of JSB in the amount of $150,000. In the loan application, Defendant BROWN and others falsely stated that JSB had 9 employees and average monthly payroll of $60,000. They submitted a fraudulent IRS Form 941 quarterly return for the first quarter of 2020 that falsely showed 9 employees and wages of $180,000.

17. After receiving the PPP loan proceeds, Defendant BROWN and others did not spend the funds on payroll or in a manner consistent with the terms of the loan.

All in violation of Title 18, United States Code, Section 371.

5

## FORFEITURE

18.  Upon conviction of the offense alleged in Count One of this Information, the Defendant, TEQUILA L. BROWN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Information.

19.  If, as a result of any act or omission of the Defendant, any property subject to forfeiture:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section

853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek
forfeiture of any property of the Defendant up to the value of the forfeitable
property.

RYAN K. BUCHANAN
*United States Attorney*

Diare C. Sch

DIANE C. SCHULMAN
*Special Assistant United States Attorney*
Georgia Bar No. 49776

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

7